**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

CEDRICK D. BENSON,

          Plaintiff,

vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

          Defendant.

2:13–cv–2013–APG–VCF

**REPORT & RECOMMENDATION**

This matter involves Plaintiff Cedrick Benson's appeal from Defendant Carolyn W. Colvin's final decision denying Benson's social security benefits. (Compl. (#3) at 2:2–24[1]). Before the court is Benson's motion for reversal and remand (#13). The Commission filed an opposition (#15); Benson filed a reply (#18). Also before the court is the Commissioner's unopposed cross-motion for affirmance (#14). For the reasons stated below, the court recommends denying Benson's motion and granting the Commissioner's motion.

**STANDARD OF REVIEW**

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. CONST. amend. V. Social security claimants have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). Where, as here, the Commissioner of Social Security renders a final decision denying a claimant's benefits, the Social Security Act authorizes the District

---

[1] Parenthetical citations refer to the court's docket and administrative record.

1

Court to review the Commissioner's decision. *See* 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

The District Court's review is limited. The court examines the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) (defining "a mere scintilla" of evidence). If the evidence supports more than one interpretation, the court must uphold the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This means that the Commissioner's decision will be upheld if it has any support in the record. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1988) (stating that the court may not reweigh evidence, try the case *de novo*, or overturn the Commissioner's decision if the evidence preponderates against it).

## DISCUSSION

Benson's appeal presents one question: whether the ALJ's decision to assign little weight to the opinion of Benson's treating physician, Dr. Sommer, is supported by substantial evidence. (Pl.'s Mot. to Remand (#14) at 7:4–7). Benson argues that this decision was erroneous because Dr. Sommer "was the only examining physician who rendered an opinion regarding Mr. Benson's functional limitations after" Benson's minor motor vehicle accident. (*Id.* at 7:8–12). Before addressing Benson's argument, the court begins its analysis by reviewing the Commissioner's burden under the Social Security Act.

2

## I. Determining Residual Functional Capacity under the Social Security Act

To qualify for benefits under the Social Security Act, a claimant must demonstrate his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). When making this determination, the Commissioner engages in a five step inquiry.

Before proceeding to step four—the only relevant step here—the ALJ must determine the claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1520(e); 416.920(e). Residual functional capacity is a function-by-function assessment of the claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In laymen's terms, it is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a). Residual functional capacity is comprised of a claimant's physical abilities, mental abilities and other impairments. *Id*. It is divided into five exertional categories: (1) sedentary, (2) light, (3) medium, (4) heavy, and (5) very heavy. 20 C.F.R. § 404.1567. In determining a claimant's residual functional capacity, the ALJ "must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted); *see also Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (holding that whether substantial evidence supports a finding is determined from the record as a whole).

## II. Whether the Commissioner's Decision to Discount Dr. Sommer's Opinion was Erroneous

The court finds that the Commissioner's decision to discount Dr. Sommer's opinion was supported by substantial evidence. The Commissioner assigned Dr. Sommer's opinion "little weight"

3

because his opinion was facially contradictory, not supported by objective medical evidence, and inconsistent with Benson's other medical records. (Admin. Rec. at 17–18). The first page of Dr. Sommer's report opines that Benson is incapacitated both "permanent[ly]/[for the] long-term" and also just "3 months." (*Id*. at 249).

Benson argues that this contrast does not amount to a contradiction because "[i]t is not unreasonable for a physician to consider three months long term." (Pl.'s Mot. to Remand (#14) at 8:1). The court disagrees. In certain circumstances, three months may qualify as long term. Here, however, the form that Dr. Sommer used equates long term with something more than three months. It asks, "[i]s this a permanent/long-term condition?" (Admin. Rec. at 249). The slash joining permanent and long term indicates that long term should be understood in conjunction with "permanent." Additionally, even if the form's plain language did not demonstrate that "long term" is to be understood as "permanent," which it does, the Commissioner's interpretation of the form would prevail. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (stating that if the evidence supports more than one interpretation, the court must uphold the Commissioner's interpretation).

The Commissioner also discounted Dr. Sommer's opinion because Dr. Sommer opined that Benson suffers from a "limited ability to ambulate, transfer, [or] sit down for any period of time." (Admin. Rec. at 18, 249). However, Dr. Sommer failed to articulate any objective clinical or diagnostic findings to support this conclusion. (*See generally id*.) This was a valid reason to discredit Dr. Sommer's opinion. *See Connett v. Barnhart*, 340 F. 3d 871, 875 (9th Cir. 2003) (upholding the Commissioner's rejection of a doctor's opinion where the Commissioner determined that the doctor's "treatment notes provide no basis for the functional restrictions he opined should be imposed" on the claimant).

The Commissioner also correctly determined that Dr. Sommer's opinion of disability was inconsistent with the record's other medical opinions. (Admin. Rec. at 18). Dr. Sherman examined

Benson and determined that Benson retained the functional capacity to perform medium-level work with frequent postural limitations. (*Id*. at 184–86). Similarly, Dr. Arnow reviewed Benson's medical records and, as noted by the ALJ, concurred with Dr. Sherman's findings. (*Id*. at 19, 190–91). These two opinions provide substantial evidence in support of the Commissioner's decision. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

Finally, the court also notes that at least five additional facts in the record support the Commissioner's decision to discount Dr. Sommer's opinion. *See Sandgathe*, 108 F.3d at 980 (holding that whether substantial evidence supports a finding is determined from the record as a whole). First, the record contains facts that raise serious concerns about Benson's credibility and the veracity of his statements to doctors. Benson testified that he applied for unemployment benefits and represented that he was ready, willing, and able to work, even though he had an application pending with the Social Security Administration, which stated that Benson was disabled. (Admin. Rec. at 52). When asked about this inconsistency, Benson stated that he wanted money. (*Id*.)

Second, Dr. Sherman found that Benson's behavior was "[m]anipulative." (*Id*. at 186).

Third, a reasonable interpretation Dr. Sommer's report demonstrates that Benson's injuries were not disabling but minor and improving with conservative chiropractic treatment. Even though Dr. Sommer checked one box indicating that Benson's condition was "permanent/long term," he wrote on three different lines that Benson's condition would only last for "3 months" and that Benson would only require "part time" care following the accident. (*Id*. at 249).

Fourth, the alleged debilitating effects of the motor vehicle accident is rebutted by the facts that no one was transported to the hospital following the accident, (*see id*. at 198), no police report was filed

5

(*id*.), and Benson did not present at the hospital until the day after the accident (*see id*. at 280), when the treating source noted that Benson's physical examination was normal, including his back and extremities (*id*. at 282). This undermines the argument presented in Benson's reply brief that "[t]he record contains only one medical evaluation that considered the traumatic incident" that allegedly rendered Benson disabled. (Pl.'s Reply (#18) at 4:23–25).

It does not. After the accident, Benson was examined at least twice: once by Dr. Sommer and once by emergency room personal.[2] As discussed above, these two reports provide conflicting opinions regarding Benson's alleged disability. Where, as here, the evidence supports more than one interpretation, the Commissioner's interpretation must prevail. *Burch*, 400 F.3d at 679.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Cedrick Benson's motion to remand (#14) be DENIED.

IT IS FURTHER RECOMMENDED that the Commissioner's cross motion to affirm (#16) be GRANTED.

IT IS SO RECOMMENDED.

DATED this 4th day of April, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

---

[2] Presumably, Benson was also consulted by the emergency medical professionals who appeared at the scene of the accident in the ambulance. If, as Benson argues, the accident was "traumatic" consequences, either the personal with the ambulance or the personal at the emergency room would have noticed.